IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

**NATHAN ROWAN,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**ALL WEB LEADS, INC.**, a Delaware registered corporation,

*Defendant.*

Case No. 1:25-cv-2080

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Nathan Rowan ("Plaintiff Rowan" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant All Web Leads, Inc. ("Defendant" or "All Web Leads") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Rowan, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Rowan is a resident of Baltimore, Maryland.

2. Defendant All Web Leads is a Delaware registered corporation headquartered in Austin, Texas. Defendant All Web Leads conducts business throughout this District and throughout the US including in Maryland.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million per day. www.robocallindex.com (last visited September 14, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant All Web Leads is Customer Acquisition Marketing business focused on the insurance industry. All Web Leads generates and sells leads to insurance agents, brokers, and carriers.[3]

15. Defendant All Web Leads places text messages to consumers to generate leads for agents, brokers and carriers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/all-web-leads-inc-/about/

16. In response to these text messages, Plaintiff Rowan brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF ROWAN'S ALLEGATIONS**

17. Plaintiff Rowan is the sole owner and user of his cell phone number ending in 5605.

18. Plaintiff Rowan registered, or had registered on his behalf, his cell phone number on the DNC on June 4, 2005.

19. Plaintiff Rowan has owned his cell phone number for over 20 years.

20. Plaintiff Rowan uses his cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

21. The calls that Plaintiff Rowan received from the Defendant were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

22. On August 18, 2025 at 4:10 PM, Plaintiff Rowan received an unsolicited call to his cell phone from 651-455-8372.

23. When Plaintiff answered this call, a person began a solicitation for auto insurance by asking if Plaintiff wants to lower his insurance by up to 35%.

24. The person then asked Plaintiff a series of questions to qualify his insurance needs.

25. Plaintiff Rowan played along at first, hoping to confirm which company was behind the calls.

26. 4 minutes into the call, the person asked if Plaintiff's cell phone number is registered on the DNC.

27. Plaintiff Rowan told the agent that his number is registered on the DNC and then said, "Do not contact me again."

28. The agent disconnected the call.

29. On August 18, 2025 at 5:17 PM, Plaintiff Rowan received an unsolicited text message to his cell phone from shortcode 40626.

30. In response, Plaintiff immediately replied, "STOP" to 40626.




31. Insure.co is no longer active, but as will be shown, the text message was sent by All Web Leads.

32. Despite the clear stop request, Plaintiff Rowan received a 2nd unsolicited text message to his cell phone on August 19, 2025 at 10:19 AM from 561-363-0442.

33. Plaintiff Rowan immediately replied "STOP" and he received confirmation that he was opted-out from receiving additional text messages.




34. Https://swiftautocoverage.com is owned/operated by All Web Leads.

35. The Terms for swiftautocoverage.com indicate in the arbitration agreement that All Web Leads is associated with the website:


auto.swiftautocoverage.com/terms

**Agreement to Arbitrate**

You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, or any products or services sold, offered, or purchased through our Services, including any contact from our subsidiaries, affiliates, or agents including, but not limited to, All Web Leads, Inc., shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you, rather than in court, except that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate"). [4]

36. Plaintiff Rowan received a 3rd unsolicited text message to his cell phone on August 19, 2025 at 10:42 AM from 740-926-4710.

---

[4] https://auto.swiftautocoverage.com/terms

37. Plaintiff Rowan immediately replied "STOP" and he received confirmation that he was opted-out from receiving additional text messages.




38. https://usaautocoverage.com is an owned/operated by All Web Leads.

39. The Terms for usaautocoverage.com indicate in the arbitration agreement that All Web Leads is associated with the website:



[5]

[5] https://auto.usaautocoverage.com/terms

40. On September 5, 2025 at 1:05 PM, Plaintiff Rowan received a 4th unsolicited text message to his cell phone, this time from 207-371-6822:




41. Insurancepro.com is no longer an active website.

42. On September 8, 2025 at 2:11 PM, Plaintiff Rowan received a 5th unsolicited text message to his cell phone, again from shortcode 40626.

43. On September 9, 2025 at 2:48 PM, Plaintiff Rowan received a 6th unsolicited text message to his cell phone, again from shortcode 40626.

44. Plaintiff Rowan immediately texted "STOP" to 40626:



45. https://driverclaimreview.com forwards to motorpolicies.com. [6] [7]

46. The Terms for motorpolicies.com indicate in the arbitration agreement that All Web Leads is associated with the website:

motorpolicies.com/terms

**Agreement to Arbitrate**

You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, or any products or services sold, offered, or purchased through our Services, including any contact from our subsidiaries, affiliates, or agents including, but not limited to, All Web Leads, Inc., shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you, rather than in court, except that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate"). [8]

47. Plaintiff Rowan has never done business with All Web Leads or consented to receive text message solicitations from All Web Leads.

48. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

49. Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

50. Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant All Web Leads called more than one time, (2) within any 12-month period, (3) where the

[6] https://motorpolicies.com/form/?c=22689&source=sep8l&pcid=
[7] https://wheregoes.com/trace/20255318376/
[8] https://motorpolicies.com/terms

person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

52. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant All Web Leads placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text message;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Rowan nor his counsel have any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Rowan. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Call Registry Class)**

56. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

59. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rowan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

60. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Rowan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rowan requests a jury trial.

**NATHAN ROWAN**, individually and on behalf of all others similarly situated,

DATED this 18th day of December, 2025.

By: /s/ Nayeem N. Mohammed
Nayeem N. Mohammed (local counsel)*
Law Office of Nayeem N. Mohammed
539 W. Commerce Street, Suite 1899
Dallas, TX 75208
972-767-9099
Email: nayeem@nnmpc.com

**Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
kaufman@kaufmanpa.com
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*